OVERTON, J.
 

 (dissenting).
 

 I think it a matter of importance that it be decided whether the promissory note, executed by the Baldwin Realty Company, was negotiable or not. In my view, the negotiability of the note was destroyed by the clause found in the third paragraph reading: “Sub
 
 *758
 
 jeet to the terms of which said sprinkler contract this note is issued, secured, negotiated and held.” The effect of this clause is to attach to the promise to pay the conditions of a contract, such, for instance, as the fulfillment of the conditions of warranty, and all other conditions which there may be in the contract, thereby making the promise to pay subject to the conditions of the contract, and leaving it, not an unconditional promise to pay, but a conditional one. Under the Law Merchant and under the Negotiable Instrument Act, Act No. 64 of 1904, a conditional promise to pay makes the note non-negotiable.
 

 ' Thus, in Gaines v. Fitzgibbons, 168 La. 260, 121 So. 763, it was held that promissory notes stating on their face that they were subject to conditions set forth in an act of sale are not negotiable, as the promise to pay was not unconditional.
 

 In Parker v. American Exchange Bank of St. Louis (Tex. Civ. App.) 27 S. W. 1071, 1073, the notes were in form negotiable, but on the back of each note there was written: “This note is given in accordance with and subject to the terms of a contract made Feb’y 10, 1891.” The notes were held to be nonnegotiable.
 

 In the case of American Exchange Bank v. Blanchard, 7 Allen (Mass.) 333, the note read: "Twelve months after date, we promise to pay to ourselves or order three hundred and twenty-one dollars for value received, payable in Boston, and subject to the policy.” The note was indorsed by the maker: “Pay to the order of the Anchor Insurance Co.’.’ The note was held to be not negotiable.
 

 In Dilley v. Van Wie, 6 Wis. 209, the promise to pay was “subject to the provisions contained in an agreement this day made between said Carter and myself,” and the note was indorsed: “Pay the within note to Stephen B. Dilley, or order.” The note was held to be nonnegotiable.
 

 In the case of McComas v. Haas, 107 Ind. 512, 8 N. E. 579, 582, the note, which was payable to order, recited: “This note is given in consideration of, and is subject to, one certain contract existing between S. B. .T. Bryant and Jacob Haas, of even date with this.” The note was held to be not negotiable.
 

 In Cushing v. Field, 70 Me. 50, 35 Am. Rep. 293, the note, which was payable to order, contained the following indorsement on its back: “This note is subject to a contract made November 13, 1874.” The note was held to be not negotiable.
 

 In Rieck v. Daigle, 17 N. D. 365, 117 N. W. 346, 347, there appeared at the end of the note, payable to order, the following clause: “This note subject to conditions of hotel purchase contract of even date herewith.” The note was indorsed in blank by the payee. The note was held nonnegotiable.
 

 To the same effect are the cases of Pope & Ballance v. Righter-Parry Lbr. Co., 162 N. C. 206, 78 S. E. 65; Klots Throwing Company v. Manufacturers’ Commercial Company, 103 C. C. A. 305, 179 F. 813, 30 L. R. A. (N. S.) 40, and annotations in L. R. A. (N. S.); Verner v. White, 214 Ala. 550, 108 So. 369.
 

 In 8 C. J. p. 124, § 216, based upon abundant authority, it is said: “A note is not negotiable where it provides that it is subject to the terms or conditions of some other agreement, as where it reads ‘subject to’ a-certain contract. * * * ”
 

 The only way by which, in my view, the note, in the case before us, might be held to be negotiable, would be to hold that, the clause, relative to the sprinkler contract, merely had reference to the origin or source
 
 *760
 
 of the -note, and did not make th,e promise to pay subject to the sprinkler contract. However, it is impossible to hold that the clause is a mere reference to the origin of the note, for the note is declared to be issued, secured, negotiated, and held subject to the terms of that contract. Here is a clear subjection of the note to the contract, and not a mere reference to its origin.
 

 In support of its position that the sprinkler contract clause is a mere reference to the origin of the note, and does not subject the note to the terms of the contract, counsel for the Interstate Trust & Banking Company cite the case of Tyler v. Whitney-Central Trust & Savings Bank, 157 La. 249, 102 So. 325. The supposed pertinency of that case to the case here is that the clause under consideration is found in the third paragraph of the note in this case far removed from the phrase showing the promise to pay. While, in ascertaining the existence of any fact, all facts bearing upon its existence should be brought to bear, and hence, in ascertaining whether a note is negotiable, it is proper to consult the grammatical construction of the note, including even the punctuation thereof, to ascertain whether a given clause or phrase qualifies and renders conditional the promise to pay or whether it is nothing more than a reference to the origin of the note, here the phraseology of the clause, without reference to its location in the note, shows clearly that the clause is not a mere reference to the promise to pay, but a subjection of the promise to the clause, making, which is the ultimate fact to be found, the promise conditional. The case has no particular pertinency here, save to show that the first section of the Negotiable Instruments Act shows that the promise must be unconditional.
 

 The note, in this instance, being nonnegotiable, all that was transferred or assigned to the Mortgage & Securities Company, as pledgee or owner, by Dickson, was all of, or an interest in, a nonnegotiable instrument, the instrument itself, as well as the assignment, being subject to attack, even in the hands of a third person, for all equities may be pleaded against a nonnegotiable instrument in the hands of a third person, who must necessarily acquire the note at his peril.
 

 I am not in accord with the finding of fact in the majority opinion that Dickson transferred to the Mortgage & Securities Company the ownership of the entire note. He says that he did not do so, and had no intention of doing so. On the other hand, two officials •of the company say that he did. The statements, however, are largely the conclusions of these witnesses. What actually happened was dictated, in the presence of the parties, for entry upon the books of the company, and was so entered. This statement, after showing the discount of the notes by the Mortgage & Securities Company, recites that the balance remaining, after the payment of Dickson’s debt to the company, amounting to “$1,325.68 goes to Dickson from collection of last note for 1929”. This entry shows that, while the company acquired the right to collect all of the last note, for its own account and for Dickson’s, yet all that it assigned to the company of the last note, as owner, was all in excess of $1,325.68, leaving Dickson the owner of the balance which was to be paid him on the collection of the note. In these circumstances, Dickson had a right to assign that balance to the Canal Bank & Trust Company, and that bank is entitled to the proceeds of the note, now on deposit in court, to the extent of $1,325.68, in preference to the Interstate Trust & Savings Bunk, the note being nonnegotiable. If there is any room for an estoppel against Dickson and the Canal Bank & Trust Company, it has not been pleaded.
 

 I therefore respectfully dissent.